UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X
GULF OIL LIMITED PARTNERSHIP,

               Plaintiff,                         **MEMORANDUM AND ORDER**
                                                      09-CV-4397 (DRH) (AKT)
           - against -

KANJI & KANJI ENTERPRISES, INC.,

               Defendant.
----------------------------------------------------------X
**A P P E A R A N C E S :**

**SHIPMAN & GOODWIN LLP**
Attorneys for Plaintiff
One Constitution Plaza
Hartford, CT 06103-1919
By: Paul D. Sanson, Esq.
     Karen T. Staib, Esq.
     Laurie A. Sullivan, Esq.

**FORCHELLI, CURTO, DEEGAN, SCHWARTZ, MINEO,**
**COHN & TERRANA, LLP**
Attorneys for Defendant
The Omni
333 Earle Ovington Boulevard, Suite 1010
Uniondale, NY 11553
By: Andrew E. Curto, Esq.

**HURLEY, Senior District Judge:**

       This action arises out of the interpretation of a written agreement regarding the sale of

branded motor fuel. Defendant Kanji & Kanji Enterprises, Inc. ("Kanji") moves to dismiss the

Complaint of plaintiff Gulf Oil Limited Partnership ("Gulf") pursuant to Federal Rule of Civil

Procedure ("Rule") 12(b)(6). For the reasons that follow, Kanji's motion is denied.

## *BACKGROUND*

       The material facts, drawn from the Complaint and the relevant agreement, are undisputed

unless otherwise noted. Gulf is a limited partnership formed in Delaware and is engaged in the

wholesale distribution of refined petroleum products to various independent dealers which operate service stations supplied by Gulf motor fuel. The contractual relationship between Gulf and independent dealers consists primarily of reseller agreements that create a petroleum marketing franchise relationship pursuant to the Petroleum Marketing Practices Act, 15 U.S.C. §§ 2801 *et seq.* ("PMPA"). Kanji, a New York corporation with its principal place of business in Huntington, New York, is one of these independent dealers.

On October 31, 2001, Tosco Refining, L.P. ("TOSCO") and Kanji entered into a written agreement entitled "Exxon Branded Reseller Agreement." Subsequently, on December 28, 2001, the parties amended it by a written agreement entitled "Exxon Branded Reseller Agreement First Amendment" ("Reseller Agreement").[1] By its own terms, the Reseller Agreement was to expire on October 31, 2006.

The Reseller Agreement created a petroleum marketing franchise relationship pursuant to the PMPA and provided that Tosco and its successors were to supply branded motor fuel to Kanji for its operation of a gasoline station in Huntington, New York. In 2003, Gulf succeeded Tosco as the supplier of branded motor fuel to Kanji. Thereafter, Gulf continued to provide Exxon-branded motor fuel to Kanji pursuant to the Reseller Agreement.

Pursuant to Section 11(b) the Reseller Agreement, Kanji was required to purchase certain minimum quantities of branded motor fuel from Gulf. Moreover, Section 29 of the Reseller Agreement contains a liquidated damages provision acknowledging that "[Gulf] will be harmed by loss of sales to [Kanji] in the event [Kanji] does not purchase the contractually required Minimum Volumes set forth in [the] agreement." (Reseller Agreement at 17, § 29(a).)

---

[1] The Reseller Agreement is annexed to the Complaint as Exhibit A.

In 2008, Gulf notified Kanji that Gulf's license to use Exxon-branded motor fuel would terminate on February 28, 2009, and that Gulf would thereafter provide Kanji with Gulf branded motor fuel. On or about February 28, 2009, Kanji ceased purchasing motor fuel from Gulf and de-branded its gas station. Kanji has since operated as "Huntington Gas."

On October 13, 2009, Gulf initiated the instant action asserting two claims for breach of contract arising out of Kanji's failure to purchase motor fuel from Gulf pursuant to the terms of the Reseller Agreement. Gulf asserts that under the Reseller Agreement, it has the right to substitute another trademarked brand for Exxon motor fuel and that Kanji is contractually required to purchase the substituted fuel. Kanji counters that Gulf may "offer" to provide another brand of motor fuel, but that Kanji was not contractually obligated to accept it.

Before the Court is Kanji's motion to dismiss the Complaint. Kanji argues that the Complaint does not state sufficient facts to support Gulf's claim that Kanji was contractually obligated to purchase anything other than Exxon-branded motor fuel. For the reasons stated below, the Court finds that the Reseller Agreement is ambiguous as a matter of law. Accordingly, Kanji's motion to dismiss is denied.

## DISCUSSION

**I.**     *Motion to Dismiss: Legal Standards*

Rule 8(a) provides that a pleading shall contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The Supreme Court has recently clarified the pleading standard applicable in evaluating a motion to dismiss under Rule 12(b)(6).

First, in *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007), the Court disavowed the well-known statement in *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957) that "a complaint should not be

dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." 550 U.S. at 561. Instead, to survive a motion to dismiss under *Twombly*, a plaintiff must allege "only enough facts to state a claim to relief that is plausible on its face." *Id*. at 570.

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact).

*Id.* at 555 (citations and internal quotation marks omitted).

More recently, in *Ashcroft v. Iqbal*, -- U.S. --, 129 S. Ct. 1937 (2009), the Supreme Court provided further guidance, setting forth a two-pronged approach for courts deciding a motion to dismiss. First, a court should "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* at 1950. "While legal conclusions can provide the framework of a complaint, they must be supported by factual assumptions." *Id.* Thus, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 1949 (citing *Twombly*, 550 U.S. at 555).

Second, "[w]hen there are well-pleaded factual allegations a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* at 1950. The Court defined plausibility as follows:

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a

>defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

*Id.* at 1949 (quoting *Twombly*, 550 U.S. at 556-57) (internal citations omitted).

In deciding a motion to dismiss pursuant to Rule 12(b)(6), a court must look to the allegations on the face of the complaint, but may also consider "[d]ocuments that are attached to the complaint or incorporated in it by reference." *Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007). *See also Gillingham v. GEICO Direct*, 2008 WL 189671, at *2 (E.D.N.Y. Jan. 18, 2008) (noting that a court considering a motion to dismiss "must limit itself to the facts stated in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint") (citation and internal quotation marks omitted).

## II. *Kanji's Motion to Dismiss is Denied*

### A. *Principles Governing Contract Interpretation*

The threshold issue in this case is whether the relevant provisions of the Reseller Agreement are ambiguous, which is a question of law. *Chapman v. N.Y. State Div. for Youth*, 546 F.3d 230, 236 (2d Cir. 2008). "Under New York law, the presence or absence of ambiguity is determined by looking within the four corners of the document, without reference to extrinsic evidence." *Id.* "[A]n ambiguity exists where a contract term could suggest more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement and who is cognizant of the customs, practices, usages and terminology as generally understood in the particular trade or business." *Id.* (citation and internal quotation marks omitted); *see also Photopaint Techs., LLC v. Smartlens Corp.*, 335 F.3d 152, 160 (2d Cir. 2003) ("Contract language is unambiguous when it has a definite and precise meaning, unattended by danger of misconception in the purport of the [contract] itself, and concerning which there is no reasonable

basis for a difference of opinion.") (citations and internal quotations marks omitted). "Unambiguous contract language is not rendered ambiguous by competing interpretations of it urged in litigation." *Photopaint Techs.*, 335 F.3d at 160 (citations omitted). If, however, the Court finds that the contract is ambiguous, its interpretation becomes a question of fact for the jury. *See Mellon Bank, N.A. v. United Bank Corp. of N.Y.*, 31 F.3d 113, 116 (2d Cir. 1994).

"In interpreting a contract under New York law, words and phrases . . . should be given their plain meaning, and the contract should be construed so as to give full meaning and effect to all of its provisions." *LaSalle Bank Natl'l Ass'n v. Nomura Asset Capital Corp.*, 424 F.3d 195, 206 (2d Cir. 2005) (citation and internal quotation marks omitted). Thus, a Court "must consider the entire contract to avoid adopting an interpretation that would result in an inconsistency between provisions or that would render a particular provision superfluous." *La Barbera v. Elite Ready Mix Corp.*, 2009 WL 2707358, at *4 (E.D.N.Y. Aug. 14, 2009); *see also Bank of N.Y. Trust, N.A. Franklin Advisers, Inc.*, 674 F. Supp. 2d 458, 463-64 (S.D.N.Y. 2009) ("[A]n interpretation that gives a reasonable and effective meaning to all of a contract is generally preferred to one that leaves a part unreasonable or of no effect."); *McGraw-Hill Cos., Inc. v. Vanguard Index Trust*, 139 F. Supp. 2d 544, 552 (S.D.N.Y. 2001) ("[I]t is a cardinal rule of contract interpretation that a court must construe the terms of an agreement as a whole and in a manner that gives effect to the mutual intent of the parties.") (citations and quotation marks omitted).

### B. *Kanji's Interpretation*

Kanji argues that pursuant to the Reseller Agreement it was only obligated to purchase motor fuel bearing the Exxon trademark, the strength and value of which were the essence of the parties'

agreement.[2] Kanji further maintains that once Gulf's license to use Exxon-branded motor fuel expired, the Reseller Agreement terminated because Kanji did not, and was not, required to accept a substitute motor fuel.

In support of its argument, Kanji notes that the liquidated damages provision of the Reseller Agreement, Section 29, specifically refers to the Exxon trademark. It provides that the Gulf has "expended significant efforts and expense in securing the rights to use the EXXON Marks" and that the marks have "unique value and impart goodwill value to the business of [Kanji]." (Reseller Agreement at 17, § 29(a).) It further provides that Gulf will "be harmed by loss of sales to [Kanji] in the event [Kanji] does not purchase the contractually required Minimum Volumes set forth in th[e] Agreement." (*Id.*) Kanji argues that reference to the Exxon mark in the liquidated damages provision limits any claim for damages to Kanji's failure to purchase Exxon-branded motor fuel.

Kanji also relies on the language in Section 11(a) of the Reseller Agreement, which provides, in pertinent part, as follows:

> [Gulf] shall have the right to change or discontinue, from time to time, such brands or grades of motor fuels without [Kanji's] permission. In addition to, and consistent with, the provisions of the Trademarks section of this Agreement, upon reasonable and timely notice to [Kanji], [Gulf] shall have the right to withdraw or discontinue the license to use EXXON Marks or substitute therefor, and *offer* to [Kanji], a license for the use of a different mark used in connection with the sale of petroleum products.

(Reseller Agreement at 9, § 11(a) (emphasis added).) Kanji argues that the use of the word "offer" created no affirmative obligation on its part to accept a substitute product. Rather, Kanji argues, Gulf could *offer* a substitute brand of fuel and Kanji was not contractually obligated to accept it.

---

[2] In this regard, Kanji notes that the title of the Reseller Agreement is "Exxon Branded Reseller Agreement." (Reseller Agreement at 3.)

### C. *Gulf's Interpretation*

Gulf argues that the Reseller Agreement unambiguously authorizes Gulf to supply a substitute trademarked motor fuel to Kanji and Kanji was contractually required to purchase that substitute fuel throughout the term of the contract. In this regard, Gulf argues that Kanji's interpretation renders meaningless other critical provisions of the Reseller Agreement.

Gulf points to Section 10(a) of the Reseller Agreement, which provides in pertinent part, as follows:

> [Gulf's] license to use Exxon's Licensed Trademark is scheduled to expire February 28, 2010, unless terminated earlier or extended by agreement between the parties. [Kanji] understands that [Gulf's] license may terminate in the future, unless extended by agreement of [Gulf] and ExxonMobil. If the license terminates, [Kanji] and [Gulf] will not be entitled to use Exxon's Marks and [Gulf] will provide a new licensed trademark to [Kanji]."

(Reseller Agreement at 8, § 10(a).) The term of the Reseller Agreement extended from December 1, 2001 to October 31, 2016. Thus, Gulf argues, the parties expressly understood that Gulf's license to use Exxon could expire if not renewed by February 28, 2010, more than six years before the agreement terminated. Kanji, however, was required to purchase stated minimum quantities of motor fuel from Gulf on a quarterly and annual basis every year through October 31, 2006. Moreover, Section 10(a) states that upon the expiration of the Exxon license, Gulf will "provide" a substitute motor fuel to Kanji. When understood as a whole, Gulf argues that Kanji was required to accept a substitute trademark and fulfill its purchase obligations until the Reseller Agreement expired.

In addition, Gulf has a different take on Section 11(a), which is set forth above. Gulf contends that pursuant to the plain language of this provision, Gulf had the right to "change . . . such brands . . . of motor fuels without [Kanji's] permission." (*Id.* at 9, § 11(a).) In addition, Gulf

8

contends that Section 11(a) gave it the right to provide a substitute motor fuel when its license to use the Exxon mark expired, subject only to Kanji's right that this new brand be a trademarked brand. (*Id.*; *see also id.* at 8, § 10(a).)

### D. The Court Finds that the Reseller Agreement is Ambiguous

After reviewing the Reseller Agreement, as well as the parties' respective positions, the Court concludes that the parties offer conflicting, yet reasonable interpretations of the relevant provisions. The language in Section 10(a) that if Gulf's license with Exxon terminates – as it was scheduled to do prior to the termination of the Reseller Agreement – Gulf will "provide a new licensed trademark to [Kanji]" and the language in Section 11(a) that Gulf "shall have the right to change or discontinue" the brand of motor fuel "without [Kanji's] permission" reasonably support the view that Gulf had a right to substitute a trademarked brand of motor fuel oil to Kanji and that Kanji was required to accept it. On the other hand, the use of the term "offer" in Section 11(a) reasonably supports the contrary view, viz. although Gulf had the unilateral right to change the brand of motor fuel and Kanji had no right to object, Kanji was not required to accept the substituted fuel and instead could reject Gulf's "offer." Since reasonable minds could disagree as to the meaning of the Reseller Agreement, the Court finds that the contract is ambiguous as a matter of law.

### CONCLUSION

For the reasons stated above, Kanji's motion to dismiss is DENIED.

**SO ORDERED**

Dated: Central Islip, New York
      November 19, 2010                                                             /s_____
                                                                                                    Denis R. Hurley
                                                                                                     United States District Judge